AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Silver Hyundai bearing Ohio license plate HWL3130; Vehicle Identification Number KMHEC4A45CA055060

Case No. 2-20-mj-479

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1201 | Kidnapping |
| 18 U.S.C. 924(c)(1)(A)(ii) | Brandishing a firearm in relation to a crime of violence |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Tisha M. Hartsough, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-13-20

*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AGAINST RUBEN JUNIOR MEDIA, AND IN SUPPORT OF THE SEARCH OF SILVER HYUNDAI BEARING OHIO LICENSE PLATE HWL 3130

I, Tisha M. Hartsough, a Special Agent with the Federal Bureau of Investigation, hereinafter referred to as the Affiant, being duly sworn, depose as follows:

### INTRODUCTION

1. I have been employed by the Federal Bureau of Investigation for approximately 18 years. I am assigned to the Columbus Resident Agency, Cincinnati Division, where I have investigated violations of many State and Federal laws, including crimes of violence, kidnapping, drug trafficking, money laundering, public corruption and civil rights and crimes related to terrorism. Relative to this affidavit, I have been trained to investigate and have directed and participated in numerous drug trafficking investigations, and I have been trained to investigate and negotiate hostage situations. Based upon my training, experience and my review of the evidence gathered by investigators assigned to this investigation, there is probable cause to believe that **RUBEN JUNIOR MEDINA** has committed violations of 18 U.S.C. §1201 (Kidnapping); and 18 U.S.C. §924 (c)(1)(A)(ii) (Brandishing a firearm in relation to a crime of violence).

### PURPOSE OF AFFIDAVIT

2. The facts and information contained herein are based on my personal knowledge and experience, that of other law enforcement personnel, surveillance operations, messaging apps and phone records and other documents and from persons with knowledge regarding the relevant facts and sources of information that have been proven reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested search warrant, and complaint and arrest warrant, and does not set forth all of my knowledge about this matter. This affidavit is being submitted in support of a search warrant for a **silver Hyundai bearing Ohio license plate HWL 3130**, and for a criminal complaint against, and for the purpose of obtaining an arrest warrant for, **RUBEN JUNIOR MEDINA.**

### PROBABLE CAUSE

3. On July 9, 2020, the Federal Bureau of Investigation was notified by detectives of the Columbus Division of Police (hereafter CPD), that on July 8, 2020, at approximately 10:53 pm, WITNESS 1 reported to CPD that a person, hereinafter VICTIM, had been forcibly taken by unknown persons while at the McDonald's located at 901 North Wilson Road, Columbus, Ohio. WITNESS 1, who had learned of these circumstances from ASSOCIATE 1, had also spoken with ASSOCIATE 2, and ASSOCIATE 3, prior to calling CPD. WITNESS 1 had prior knowledge that VICTIM and ASSOCIATES 1, 2 and 3, were all involved in drug trafficking activities together. All three ASSOCIATES told WITNESS 1 they were with VICTIM at the time of his

1

abduction and that VICTIM was taken by unidentified men while meeting with those men to discuss a large narcotics transaction. The men were bald with beards, and in a black van with what was believed to be New York license plates. Upon learning this information, WITNESS 1 attempted to call a cell phone used by VICTIM and the phone was shut off.

4. Investigators obtained search warrants, issued in the State of Ohio, for the location data of two cell phones known to be used by VICTIM. From the data gathered pursuant to those search warrants, it was determined that one phone remained in Columbus and the other phone was last able to be located on July 9, 2020 at approximately 1:34 am within 2,500 meters of the intersection of Interstate Route 99 and Interstate Route 76 in Pennsylvania. The phone that remained in Columbus was later located within the vehicle that VICTIM had been driving earlier in the day. The vehicle was parked near ASSOCIATE 2'S residence.

5. On July 8, 2020 at approximately 9:30pm, WITNESS 1 received a call from VICTIM using a private number. VICTIM said he would be alright, that he had to go take care of some things and would hopefully be back in a few days. WITNESS 1 believed that VICTIM was also trying to ask WITNESS 1 to contact the police by using coded language, because VICTIM was not alright and was in danger. Approximately two hours later, VICTIM called again from a private number and repeated that he was with some people and had to go do some things. He said he hoped he would be back.

6. WITNESS 1 was told by ASSOCIATE 3 that VICTIM had expressed some concern about meeting with the two unknown men but decided to go the meeting anyway. ASSOCIATE 3 also said he had been contacted on or about July 9, 2020 by VICTIM via the smartphone application Telegram (after VICTIM had been abducted). Through the app, VICTIM asked ASSOCIATE 3 for the phone number of ASSOCIATE 1, which ASSOCIATE 3 provided.

7. WITNESS 1 stayed in contact with all three ASSOCIATES from July 9, 2020 through July 11, 2020. During that time, WITNESS 1 learned that VICTIM, and others who were in his presence, contacted ASSOCIATE 1 on multiple occasions to discuss the release of VICTIM. During some of those calls, ASSOCIATE 2 was also present. The calls would come from a private number and it was VICTIM who did most of the talking during the calls. ASSOCIATE 1 and ASSOCIATE 2 told WITNESS 1, that VICTIM was attempting to negotiate with the hostage takers for his own release. WITNESS 1 was aware that VICTIM and ASSOCIATE 1 were awaiting the arrival of approximately fifty kilograms of cocaine to Columbus, Ohio. In some of the calls, VICTIM suggested to ASSOCIATE 1 that some money could be raised through the sale of that cocaine, if it arrived in Columbus in time. ASSOCIATE 1 and ASSOCIATE 2 told WITNESS 1 they believed VICTIM was being held in a warehouse in New York.

8. WITNESS 1 learned through conversations with ASSOCIATE 1 and ASSOCIATE 2 that VICTIM previously brokered an eleven kilogram cocaine transaction in which the hostage takers were the source of supply. This cocaine shipment was never

paid for and the hostage takers were now holding VICTIM responsible for the money owed. VICTIM was being held hostage until a sum of money could be delivered to the hostage takers. The amount demanded varied over several calls, however in a conversation between WITNESS 1 and ASSOCIATE 2 at approximately 10pm, on July 10, 2020, ASSOCIATE 2 said the hostage takers had agreed to accept $170,000, which would account for five of the eleven kilograms that were priced at $34,000 per kilogram. ASSOCIATE 1 and ASSOCIATE 2 were attempting to raise the money on behalf of VICTIM and requested that WITNESS 1 and others, including WITNESS 2, also raise money.

9. On July 10, 2020, ASSOCIATE 1 and ASSOCIATE 2 told WITNESS 1 and WITNESS 2 that the hostage takers were bringing VICTIM back to Columbus and would arrive sometime around 5:00 am on July 11, 2020. ASSOCIATE 3 sent WITNESS 1 a Facebook message saying the same. ASSOCIATE 1 and ASSOCIATE 2 asked both WITNESS 1 and WITNESS 2 to raise money that could be given to the hostage takers when they arrived in Columbus. Arrangements had been made between ASSOCIATE 1 and the hostage takers to meet sometime after 9am on July 11, 2020 at an undetermined location in Columbus.

10. On July 10, 2020 at approximately 11:30pm, VICTIM called WITNESS 1 from a private number. He told WITNESS 1 that he was on his way back to Columbus and would arrive at approximately 5am. Using phone records from WITNESS 1's phone, investigators were able to determine the number VICTIM was calling from, and were also able to obtain court-authorized location information on that phone. Location data determined the phone was traveling west from New Stanton, Pennsylvania at approximately 3:45am on July 11, 2020. The phone continued a path westward through Pennsylvania, through West Virginia, and into Ohio. At 6:45am, on July 11, 2020, location data showed the phone in Columbus, Ohio.

11. On July 11, 2020, at approximately 7:00am, WITNESS 1 received a Facebook message from ASSOCIATE 1 saying he was meeting the hostage takers within minutes at Chipotle in Easton Town Center located at 4034 Townsfair Way, Columbus, Ohio. Surveillance was established in the area and at approximately 7:08am, investigators located a **silver Hyundai** sedan parked in a parking lot across from Chipotle in Easton Town Center. The vehicle was bearing **Ohio license plate HWL 3130** and was occupied by two males (later identified as VICTIM and **RUBEN JUNIOR MEDINA).**

12. At approximately 7:25am, investigators observed an unidentified male in a gold Honda leave the area of ASSOCIATE 2'S residence and drive to the area of the Chipotle at Easton Town Center, where he met with the two men (VICTIM and **RUBEN JUNIOR MEDINA),** from the **silver Hyundai** at approximately 7:35am. After approximately ten minutes, both vehicles departed the area of Easton Town Center. The gold Honda was followed back in the direction of ASSOCIATE 2's residence and the **silver Hyundai** was followed to an apartment complex near New Albany, Ohio, where it pulled into a parking spot.

3

13. At approximately 8:00am, VICTIM was observed running from the **silver Hyundai** and entering an apartment approximately two hundred yards from where the **silver Hyundai** was parked. **RUBEN JUNIOR MEDINA** remained in the **silver Hyundai** and at approximately 8:07am, he began to drive slowly in the direction that VICTIM had run. At approximately 8:09am, **RUBEN JUNIOR MEDINA** was taken into custody without incident. **MEDINA**'s birthdate is August 1, 1986 and he is bald with a beard. Observed in plain view inside of the **silver Hyundai** were two cell phones and a backpack. Located in **MEDINA**'s pocket at the time of his arrest were the VICTIM'S identification card and a fishing license in the name of VICTIM.

14. At approximately 8:15am, VICTIM was interviewed and in part, said the following:

> He had been taken against his will at the McDonalds on Wilson Avenue in Columbus, Ohio. One of the men who took him was **MEDINA**. Once inside of the hostage takers' vehicle, he was threatened at gunpoint to pull up his pant leg and expose the ankle monitor on his leg. One of the hostage takers removed the ankle monitor and threw it from the vehicle. VICTIM said he attempted to open the vehicle door while it was moving in order to escape and was hit with the butt of the gun that had been pointed at him.

> He was driven to Philadelphia, Pennsylvania. He was abducted and held by **MEDINA** and others, who are members of or associated with the Sinaloa Cartel, because of his involvement in a transaction where eleven kilograms of cocaine were not paid for.

> While he was held in captivity, VICTIM was kept in a dark room and a hood was placed over his head. He was tied to a chair, beaten and his feet were burned. His captors threatened to kill him, cut off his head and cut off his thumb. At one point they placed something that felt like pliers or wire cutters at the base of his thumb in support of that threat.

15. Investigators observed what appeared to be blistered, oozing skin on the bottom of his left toe, a large, purple bruise on the side of his foot, a swollen thumb, and marks on his wrists.

## CONCLUSION

15. Based on the foregoing facts, your affiant believes there is probable cause for the arrest of **RUBEN JUNIOR MEDINA** for violations of 18 U.S.C. §1201 (Kidnapping); and 18 U.S.C. §924 (c)(1)(A)(ii) (Brandishing a firearm in relation to a crime of violence), and for the search of the **silver Hyundai bearing Ohio license plate HWL 3130.**

I respectfully request that the warrant be issued.

Respectfully submitted,

*[signature]*
Tisha M. Hartsough
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 13 day of July, 2020 at Columbus, Ohio.

*[signature]*
CHELSEY M. VASCURA
U.S. MAGISTRATE JUDGE

5